I'm Andrew Stevenson for Mr. Rodriguez-Serrano, my colleague Chris Martinez, who will also be arguing on rebuttal today. I'd like to actually put three minutes, reserve three minutes for rebuttal, please. The Legalization Appeals Unit abused its discretion in denying Mr. Rodriguez-Serrano's application under the Special Agricultural Worker Program. Since a remand to the agency would be futile, we ask that the Court grant temporary residence to Mr. Rodriguez-Serrano. Mr. Rodriguez-Serrano established his employment with Jesse Pacina and Action Produce as a matter of just and reasonable inference. He did so by submitting three affidavits with his Special Agricultural Worker application, one from Miss Pacina and two from coworkers and personal acquaintances that he knew, Mr. Hoyos and Mr. Lusania. The LAU conceded in 1995 that he had established his employment. In their communication on page 42 of the record that said, It does not appear that the evidence submitted is sufficient to refute the applicant's claim. The burden then shifted to the agency to disprove the evidence with a showing which negates the reasonableness of the inference. The agency did not do so. And in fact, it abused its discretion in two ways. First, it arbitrarily gave conclusive weight to the least persuasive and reliable piece of evidence. And secondly, it arbitrarily disregarded the other two affidavits that were submitted as part of the application. First, to the arbitrary weight to the inconclusive piece of evidence, the LAU contends that a handwritten list submitted by Miss Pacina negates the reasonableness of Mr. Rodriguez-Serrano's employment. Now, this list establishes something. It establishes that there was some fraud committed on the part of Miss Pacina. And it establishes that there was also some legitimate employment, that she legitimately employed some workers. However, specifically regarding the case of Mr. Rodriguez-Serrano, this list establishes nothing because there's no reason to believe that the list is complete and accurate. Well, why do you focus on the list? There's her affidavit that she committed wholesale fraud, and then there's a few exceptions. And certainly her confession that she engaged in wholesale fraud is the main thing. Right. She did admit that she committed some fraud. However, there was not enough attention given to this individual application. No, but you can – I think a fact-finder can consider the fact, here's a person who does this all the time, and she thinks there were a few exceptions. But it's not the small list. It's the main confession. It's the piece of evidence. Right. Well, there are some circumstances surrounding not only the creation of the list, but the agency's review that raises some further serious doubts to the accuracy of the list. Well, you know the standard here, that the findings have to be directly contrary to clear and convincing facts. I find it very hard to say that choosing to credit the later confession is directly contrary to anything. Well, the – first of all, the burden of proof was only – the Congress intent in passing this legalization program was that it be implemented liberally and generously, and in fact, flexibly, and allowing for various kinds of proof to come in. Sure, but it set the standard of review, directly contrary to – directly contrary to clear and convincing facts. Now, I can't see how you can call what they did directly contrary. Well, the – I'm sorry. I'm not sure I understand Your Honor's question. Well, the standard of review of the decision of this agency is that it is conclusive unless the findings are directly contrary to clear and convincing facts. Well, also, it's established in statute and regulation that if the – it can be found that the agency abused its discretion in – in its consideration of the evidence. Okay. Well, what's the abuse of discretion? Well, the argument is this Court has already found and holds as a standard for abuse of discretion that any decision that is arbitrary, irrational, or contrary to law is one that – where an agency abuses its discretion. And, in fact, in this case, the conclusive weight that was given to this list that is unreliable was an arbitrary decision. But this isn't the list that's being credited. It's her affidavit. You had to get in under that list. But put the list aside. Sure, it's unreliable. All you've got then is an affidavit saying I engaged in massive fraud. The affidavit says she engaged in fraud, but both due process and the standard for abuse of discretion require that this – that that fraud related specifically to the applicant. Well, why if she's believable the first time doesn't she believable the second time? Well, in fact – First time she says I did it. Second time she said I didn't do it. In fact, she lied under oath for her pecuniary gain in filling out lots of these affidavits, so I don't know that we can rely on her word in the first place. All right. So then you don't have any evidence for him. We do have evidence. In fact, the two other affidavits that were submitted in support of Mr. Rodriguez- Serrano by personal – by personal affiliates to his work, his coworkers and personal acquaintances, also should have been considered by the agency, and it was arbitrary to disregard these. You don't have any – you don't have dates for them, do you? Well, in fact, the regulations do not require specific dates. They also – they do articulate the work period in which he worked, the type and nature of work, and in fact, they also, as required by regulations, included their personal contact information so the agency could contact them and verify whether or not their word was true. The agency did not do that. Furthermore – Were the coworkers on the list or not? The coworkers were not included on the list, but, Your Honor, our argument says that the list, because it was inherently unreliable, because it was prepared under the gun of an investigation against her, because it was prepared handwritten in the presence of an INS attorney and an LAU agent, because it was prepared three years after the alleged employment time with no evidence in the record to reflect that anything other than Ms. Pacina's memory served to recall these dozens of coworkers. This all points to the fact that the evidence is inconclusive. Also, it should be said that the review procedure, page 22 of the record, calls attention to other employers that had engaged in fraud, and it says that, in essence, says that the agency recognized that memory-based lists cannot be complete and that individual review must be taken to add or subtract specific names from each list. And, in fact, the agency made no attempt to contact Ms. Pacina, and this goes against, in fact, their very own policy. I'll reserve the rest of the time for rebuttal. Thank you. Thank you, counsel. Ms. Goldman. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the United States. This Court should uphold the agency decision and deny the petition for review. Mr. Rodriguez-Serrano has failed to meet his burden to show that the agency abused its discretion in denying his application for relief. The crux of this case is essentially whose evidence is going to be believed. Mr. Rodriguez-Serrano says that he worked the required number of days. That evidence is completely overwhelmed by Ms. Pacina's affidavit and the list, which say that in not some of the cases, as Petitioner has argued today, that in some of her cases there were fraud. It was close to 95 percent of her cases were fraudulent affidavits that she submitted. Mr. Rodriguez-Serrano could have been on that list. He wasn't. In the face of that evidence, the LAU did not abuse its discretion. Are you comfortable with thinking that that list is accurate and complete? Yes, Your Honor. Why? For several reasons. First, Your Honor, it was produced as part of a plea agreement. Presumably it was used as part of her plea agreement. If it was good enough for a U.S. district court judge to use in taking part of a ‑‑ presumably it's good enough for this process as well. Well, there are two different purposes. Yes, Your Honor. It seems that the circumstances under which that list was made, three years after the fact, with no records, just sitting down and writing it, is very suspect. Now, the government made no effort to check with the other affidavits. Is that correct? I believe that's correct, Your Honor. And you're comfortable with our government operating in that fashion? Your Honor, here's why, if I can offer this answer. And this goes to the argument that the government put forth in its brief with regard to exhaustion. What Mr. Rodriguez-Serrano is asking this Court to do is overturn the LAU's decision. He's not asking for what presumably under the Ventura case normally an agency decision would be remanded to the agency. Well, we could do that, isn't it? And the government would submit that if this Court is going to go in that direction that a Ventura remand would be appropriate. But essentially, he had his opportunity. This is a paper case. It's a paper review case. He had that opportunity. To do what? To submit, once he's given a notice of intent to deny, the notice of intent to deny is very clear. It says if you want to challenge this, you've got 30 days to submit something. Yeah. What would he submit? Your Honor, every single argument that he's made today could have been made to the  And that's the government's point with regard to the exhaustion argument. Every single argument that he's made today could have and, in fact, should have been made to the agency. Because if he wanted to say there's a problem with this list, where's Ms. Pacina? I want to try and find her. I want to track her down. I want to ask her, hey, what about me? Do you remember me? He could have done that. He had every opportunity to do that. He didn't do that. And that goes to the government's point with regard to exhaustion. He had the opportunity to exhaust his administrative remedies, to challenge  Your question, Your Honor, about is the government comfortable, the procedures were in place for Mr. Rodriguez-Serrano to challenge that affidavit. There's no suggestion that he wasn't served the notice of intent to deny. He had every opportunity to respond to it. He chose not to. And so all of Your Honor's concerns about how this list was created, was he given the opportunity to ask her specifically, do you remember me, it's not like he didn't have that opportunity. He had every opportunity. He chose not to take advantage of it, instead to bypass the administrative review and come to this Court. And that goes to the government's argument again about exhaustion. This Court, although there's no statutory requirement for exhaustion. Right. There is none. There is absolutely none, and the government concedes that in our brief. But the prudential exhaustion argument fits completely in this case. This is a perfect case where had Mr. Rodriguez-Serrano gone to the LAU and made all of the arguments that he's now making before this Court, all of his concerns could have been addressed. That's the perfect situation for the prudential exhaustion document to be applied or doctrine to be applied. And for those reasons, the government would urge that this Court find that Mr. Rodriguez-Serrano has not exhausted his administrative remedies. With regard, again, to some of the due process concerns that he's raised, he had the opportunity. He alleges in his briefs that he didn't have the opportunity to respond to the evidence. He had that opportunity. He chose not to take advantage of it. With regard, again, to the actual evidence that was before the LAU, he says he worked. The days that he alleges he worked are not specific. He's not required to say that. I'm not suggesting that he is. His affidavits that are supposedly corroborating his evidence don't corroborate with any degree of specificity as to the dates. Then we get to the fact that is inescapable in this case. Ninety-five percent, 95 percent of Ms. Pacina's affidavits were fake. The government didn't stop there and say, okay, that's enough. They went back. They said, were any of your cases legitimate? You had a thousand affidavits. Any of them good to go? She says, yes, here's a list of 5 percent. And Mr. Rodriguez-Serrano's name was not on that list, and neither was or were either of the names of his coworkers who supposedly attested to his employment. For all those reasons, Your Honor, the government would submit that the agency did not abuse its discretion and would ask this Court to deny the petition for review. Thank you, counsel. Rebuttal. First of all, as to the argument of no jurisdiction, as they concede, Section 210 of the INA grants this Court jurisdiction to review this denial. Secondly, there's no statutory requirement of exhaustion. And thirdly, the administrative process was exhausted in that this issue did have a full hearing. And the reason I say that is he resubmitted his evidence initially to the LAU. And in that resubmission, he was essentially saying, you abused your discretion because all of this proves that I deserve, that I qualify for these benefits. In fact, proof of this is that the agency realized its error and remanded the case to determine whether the alleged list was sufficiently reliable to justify a denial. Although his submission wasn't eloquent, he didn't say due process, he didn't say you abused your discretion, it was adequate to alert the service to the fundamental error in their denial of his application. Now, the government says that the list should be given way and that it should be given way because it was given, it was created in the context of a plea agreement. That plea agreement did nothing to ensure that Mr. Rodriguez's interests were represented. That plea agreement was to ensure that Ms. Pacina got a lenient sentence and to ensure that the service could resolve these disputes easily. There was no care given to whether or not Mr. Rodriguez, in fact, was or should have been included on the list. So the argument that the decision was reasonable, given that Ms. Pacina stated in her affidavit that nobody on the list worked for her, has no merit, because if the list had been effectively created, if the list had, if there were sufficient controls during the creation of the list to ensure that it was complete, then it could be argued that it was reasonable to deny the application. However, the service in this instance chose simplicity over thoroughness. The service knew what steps it could have taken. If they wanted to ensure that Mr. Rodriguez, in fact, didn't work for Ms. Pacina, really all they had to do was ask, did Mr. Rodriguez work for you, Ms. Pacina, as they did in other cases as established on page 22 of the record. With other contractors who were in a similar situation, the applicants were given a chance to have their names presented to the known purveyor of fraud with the hopes that it would refresh their memory. In essence, memory created lists three years after the fact just cannot be complete. I doubt if anybody here could create a complete list of workers with whom they worked for three years ago off the top of their head, especially under the stressful conditions surrounding this creation. So in conclusion, this is how the service abused its discretion and that they failed to refute what they acknowledged initially was sufficient to establish that Mr. Rodriguez worked for Ms. Pacina. This court should now correct this abuse of discretion and grant Mr. Rodriguez his status. Thank you. Thank you, counsel. The case has heard will be submitted. The next case on the oral argument calendar this morning is Humanites v. Ashcroft. Morning, counsel.
judges: B. Fletcher, Noonan, Thomas